UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RONALD TERRY GILLMAN,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

No. C10-1535Z

ORDER

THIS MATTER comes before the Court on plaintiff's objections to the Report and Recommendation ("R&R") of United States Magistrate Judge Brian A. Tsuchida, docket no. 18. With respect to plaintiff Ronald Gillman's appeal from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 401-434 and 1381-1383f, the R&R recommends that the Commissioner's decision be affirmed and that this case be dismissed with prejudice.

The R&R identified two errors made by the Administrative Law Judge ("ALJ"), namely (i) rejecting the opinion of a treating physician, Paul Boone, M.D., and (ii) discounting plaintiff's credibility because he did not pursue surgical options to address his back pain, which stems from degenerative disc disease, diagnosed following a motor

ORDER -1

vehicle accident in 2001, and because he can perform some activities of daily living.[1] The R&R, however, concluded that the ALJ's errors were harmless. Plaintiff objects to the R&R's harmless error analysis. Having reviewed the R&R, plaintiff's objections, and the remaining record, the Court enters the following Order.

**Discussion**

**A.     Standard of Review**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b); *see also* 20 C.F.R. § 404.1572. Step two asks whether the claimant has a severe impairment, or a combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). Step three involves a determination of whether any of claimant's severe impairments is equivalent to one that is listed in the regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d). A claimant with an impairment that "meets or equals" a listed impairment for the requisite twelve-month duration is per se disabled and qualifies for benefits.

If the claimant is not per se disabled, then the question under step four is whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f) and 416.920(e) & (f). If the claimant can still perform past relevant work, then the claimant is not entitled to disability benefits and the inquiry ends there. On the other hand, if the opposite conclusion is reached, the burden shifts to the

---

[1] The Commissioner has not objected to this or any other portion of the R&R, *see* Response to Plaintiff's Objections to R&R (docket no. 20), and the Court ADOPTS the R&R's conclusion that the ALJ erred in disregarding Dr. Boone's opinion and in relying on plaintiff's "conservative" approach to treatment and ability to engage in household chores in discrediting plaintiff.

ORDER  -2

Commissioner at step five to prove that the claimant can make an adjustment to other work, taking into account the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(g) & 416.920(g). If the claimant cannot make such adjustment to other work, disability benefits may be awarded.

This Court's review of a decision reached via this five-step process is limited to assessing whether the Commissioner's denial of benefits is free of legal error and based on factual findings that are supported by substantial evidence. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998); *see* 42 U.S.C. § 405(g). Substantial evidence means more than a mere scintilla but less than a preponderance of evidence; it is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Court may not affirm simply by isolating a specific quantum of supporting evidence. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If, however, the evidence reasonably supports both affirming and reversing the denial of benefits, the Court may not substitute its judgment for that of the Commissioner. *Reddick*, 157 F.3d at 720-21.

**B. ALJ's Decision at Step Five**

The focus of plaintiff's appeal, as well as his objections to the R&R, is the ALJ's decision at step five of the analysis. The ALJ concluded that plaintiff could make an adjustment to other work, specifically as a production assembler, cashier, housekeeping cleaner, or order clerk, and that such jobs are available in significant numbers in the national and local economy. AR 18. This decision was premised in part on (i) assigning little weight to Dr. Boone's opinion that plaintiff is limited to sedentary work, Ex. 11F at 92-95, AR 429-32; AR 17, and (ii) discounting plaintiff's own assessment that he has difficultly "lifting

ORDER - 3

orange juice in the morning," is unable to sit upright in a chair due to pain, can only sit in a reclining position for about two hours at a time, and has trouble concentrating and staying focused and alert, in part due to his medications, AR 57-60, AR 16.

Although the R&R agreed with plaintiff that the ALJ improperly rejected Dr. Boone's opinion, the R&R concluded that such error was harmless because the vocational expert was asked a hypothetical that tracked Dr. Boone's assessment of plaintiff's residual functional capacity. The Court is not so persuaded. In analyzing this issue, the Court is mindful that the Commissioner, and not plaintiff, bore the burden at step five of proving that plaintiff could make an adjustment to other work. *E.g.*, <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).

According to Dr. Boone's report dated May 26, 2009, plaintiff is "[u]nable to sit for extended times." Ex. 11F at 94, AR 431. Moreover, "[p]ain inhibits [his] ability . . . to concentrate." <u>Id.</u> at 95, AR 432. The vocational expert was asked to assume that plaintiff could sit for two hours, have a stretch break, and then resume sitting for another two hours. AR 69-70. In response, the vocational expert described jobs entailing an eight-hour work day, broken into four two-hour segments, with two fifteen-minute breaks (one mid-morning and one mid-afternoon) and a thirty-minute lunch break. AR 71. When plaintiff's counsel inquired how the analysis might be affected if plaintiff needed longer breaks or had to lie down during a break, the vocational expert responded that "these jobs are pretty rigidly scheduled, so that would probably . . . fit more into the category of an accommodation, so not really fitting into what the competitive work is as it normally competitively exists." AR 72. Thus, the hypothetical posed to the vocational expert did not sufficiently conform to Dr. Boone's assessment to conclude that the ALJ's disregard of the treating physician's opinion was harmless error.

Likewise, although the R&R concluded that two of the reasons on which the ALJ relied to discount plaintiff's credibility were invalid, the R&R reasoned that such errors were

ORDER -4

harmless in light of (i) two medical opinions indicating that plaintiff could perform sedentary work, (ii) evidence of plaintiff's drug-seeking behavior, and (iii) testimony concerning a long-distance trip plaintiff made in a motor vehicle. The Court disagrees with the R&R's analysis. With regard to the R&R's first basis for finding the ALJ's errors harmless, one of the two medical opinions to which the R&R refers was from Dr. Boone,[2] who explicitly stated that plaintiff could not sit for extended periods. To treat Dr. Boone's report as supporting plaintiff's capacity to perform sedentary work ignores both the substance of Dr. Boone's opinion and the fact that the ALJ erroneously rejected it in ruling that plaintiff could adjust to other work.

As to the R&R's second premise concerning plaintiff's drug-seeking behavior, the R&R relied on a distinguishable case, namely *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001). In *Edlund*, the Ninth Circuit found that the claimant's drug-seeking behavior constituted a specific and legitimate reason for rejecting the treating physician's opinion. *Id.* at 1157. The *Edlund* Court found merit in the ALJ's observation that, "unbeknownst to [the treating physician], Edlund was exaggerating his complaints of physical pain in order to receive prescription pain medication to feed his Valium addiction." *Id.* In contrast, in this case, as specifically noted by the ALJ, the treating physician was well aware of plaintiff's drug-seeking behavior before rendering his medical opinion. *See* AR 15-16.

In February 2009, Dr. Boone indicated that plaintiff "displays classic pressuring and coercion for meds," and he suspected, but could not yet prove, that plaintiff "has a passive-aggressive approach that leads to secondary gain of extra meds." AR 380. In early May 2009, Dr. Boone recorded that, in response to plaintiff's request for Vicodin, he said "no," and that he was "greatly mindful that the patient had two urine drug screens negative for

---

[2] The other medical opinion described in the R&R was from an examining physician, Steven Goodman, M.D., who assessed plaintiff as being able to sit for a full eight-hour work shift, thereby contradicting Dr. Boone's opinion. *See* Ex. 3F, AR 238-41. An examining physician's opinion, however, is given less weight than a treating physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

ORDER - 5

oxycodone, despite being actively Rx'd that agent." AR 344. Three days later, on May 11, 2009, Dr. Boone "explained to [plaintiff] now, as he is here crying tearfully, that since he has repeatedly broken his CSA [chronic substance agreement] in various fashions, we cannot continue the narcotic prescribing." AR 341. Over two weeks later, on May 26, 2009, Dr. Boone issued the report previously discussed, which assessed plaintiff as "[u]nable to sit for extended times." AR 431. Thus, unlike in *Edlund*, in this case, the treating physician was acutely aware, before issuing his report, that plaintiff was "divert[ing] . . . medications, and possibly selling them," AR 274, and the drug-seeking behavior is not "a specific and legitimate reason" to doubt the treating physician's opinion concerning plaintiff's residual functional capacity.[3] *Edlund* is simply not on point.[4]

The R&R cited *Edlund* for the proposition that an ALJ may discredit a claimant's testimony when the claimant obtains or seeks to obtain medication by deceiving or manipulating a medical professional. Not only does *Edlund* not explicitly so hold, but the ALJ in this case did not engage in such reasoning. Rather, the ALJ found that plaintiff's

---

[3] In *Edlund*, the treating physician put forth an opinion that the claimant "might be completely precluded from any meaningful work activity whatsoever." 253 F.3d at 1158. The *Edlund* Court held that, because the treating physician's opinion was properly rejected, the ALJ did not err in finding that "the claimant's complaints are not credible or supported by substantial evidence." *Id.* at 1157. In contrast, in this case, Dr. Boone's assessment was not undermined by unrevealed drug-seeking behavior, and thus, plaintiff's testimony concerning his physical limitations has some corroboration.

[4] Plaintiff relies on an equally ill-suited authority, *Sousa v. Callahan*, 143 F.3d 1240 (9th Cir. 1998). In *Sousa*, the Ninth Circuit addressed the effect of 42 U.S.C. § 423(d)(2)(C), which provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if drug addiction or alcoholism would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." The *Sousa* Court remanded for further proceedings as to whether the claimant's disability would have continued if she stopped using drugs or alcohol, observing that "[j]ust because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too." 143 F.3d at 1245. The question before this Court, however, is not whether plaintiff would still be disabled were he to cease taking prescription medications, but rather whether the ALJ erred in relying on plaintiff's drug-seeking behavior to discount his credibility concerning the extent of his physical limitations. The *Sousa* opinion simply does not address this issue.

ORDER - 6

drug-seeking behavior combined with laboratory results showing "no sign of Oxycodone" evidenced an "ability to function without his pain medications," thereby undermining plaintiff's credibility specifically concerning his complaints of pain. AR 16. The record, however, also reflects that, during the same time frame when physicians refused to prescribe him any narcotics, plaintiff overdosed on phenobarbital that he purchased at a garage sale and was admitted to a hospital, where he remained for approximately a week. AR 270-77. A treating physician, James Gerard, M.D., ruled out suicidal intent, instead speculating that plaintiff suffered "desperation secondary to being taken off his chronic pain medications." AR 276.

Dr. Gerard noted that plaintiff contemporaneously tested positive for cocaine, AR 274; *see* AR 294, supporting an inference that plaintiff was either selling or trading his prescribed medications to obtain illegal narcotics. Although such behavior might be criminal, it does not necessarily negate plaintiff's assertions of pain. Indeed, in addition to "[p]olysubstance overdose," Dr. Gerard included in his primary diagnosis "[c]hronic pain." AR 276. When viewed in context, plaintiff's drug-seeking behavior does not itself support the ALJ's conclusion that plaintiff's complaints of pain are not credible. The ALJ did not suggest that plaintiff's drug-seeking behavior demonstrated a tendency to engage in deception that might reflect negatively on plaintiff's overall veracity, and the Court makes no ruling concerning this more general issue.

Finally, with respect to the R&R's third reason for deeming harmless the ALJ's errors regarding plaintiff's credibility, the Court is not persuaded that plaintiff's one-time drive to California constitutes a "clear and convincing" reason for rejecting plaintiff's subjective complaints. *See Lester*, 81 F.3d at 834. The ALJ misstated plaintiff's testimony, indicating that the drive took seven days instead of the two or two-and-a-half days that plaintiff estimated, *compare* AR 15 *with* AR 58, and the R&R repeated the mistake. Whether the ALJ's misperception about the length of the trip operated in favor of or against plaintiff

ORDER -7

remains unclear. The ALJ focused on the amount of time (two to three hours) between stretch breaks, but did not inquire about the length or nature of the various stretch breaks, and ignored aspects of the drive that might distinguish it from a work situation, for example, heated seats in a comfortable Cadillac, and significant recovery time upon arrival in California. In sum, given this record, the Court cannot conclude that the ALJ's errors in assessing plaintiff's credibility were harmless.

**Conclusion**

For the foregoing reasons, the R&R, docket no. 18, is ADOPTED in part and REJECTED in part. The R&R's conclusions that the ALJ erred in rejecting Dr. Boone's testimony and in relying on plaintiff's conservative treatment approach and ability to engage in certain household chores to discount plaintiff's credibility have not been challenged and are hereby ADOPTED. The R&R's recommendations that the ALJ's errors be deemed harmless and that the denial of benefits be affirmed are REJECTED. This matter is hereby REVERSED and REMANDED to the Commissioner for further proceedings as to step five of the sequential process for determining whether plaintiff is disabled. On remand, the ALJ is free to re-examine plaintiff and to re-evaluate his credibility, to obtain additional medical evidence and/or supplemental testimony from the vocational expert, and to consider anew whether the Commissioner has met the burden of establishing that plaintiff can make an adjustment to other work.

IT IS SO ORDERED.

The Clerk is directed to send a copy of this Order to all counsel of record and to Magistrate Judge Tsuchida.

DATED this 1st day of July, 2011.

/s/ Thomas S. Zilly
Thomas S. Zilly
United States District Judge